JOSEPH L. FARDEN, petitioner,

*v.*

MABEL HESTER FARDEN, defendant.

[Decided November 2d, 1935.]

*Mr. Frank G. Turner (Mr. Bernard M. Degheri)*, for the petitioner.

*Mr. Simon L. Fisch,* for the defendant.

HERR, A. M.

The petition prays for a decree of divorce *a vinculo* on the ground of adultery, the charge being that the defendant on

December 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th and 13th, 1931, committed adultery "at some place unknown to your petitioner with a person whose name is unknown to petitioner and whom petitioner is unable to describe," and that thereafter the defendant became ill and was discovered to be suffering "from a sudden acute fresh attack of a vile and loathsome venereal disease, which disease she acquired and contracted through her adulterous relations between the dates of December 5th and December 13th, 1931."

The answer denies adultery, and denies that the defendant suffered "from a sudden acute fresh attack of a vile and loathsome venereal disease." It sets up that the defendant was discovered to be suffering from "a gonorrheal infection of long standing," which was transmitted to her by the petitioner through sexual intercourse, the petitioner having been for a number of years afflicted with gonorrhea.

The defendant also counter-claims for separate maintenance on the ground of extreme cruelty, setting up sundry instances of alleged extreme cruelty practiced upon her by the petitioner, culminating in the charges of adultery brought against her by the petitioner, which she says were false charges, aggravated by his "calling her vile and indecent names, such as 'dirty rat,' 'that she was worse than a dirty street bum,' that she was 'lower and rottener than the worst nigger in the world,' and in his communication to her of the venereal disease of gonorrhea," whereby her health became greatly impaired, &c.; and charges that he is still afflicted with the disease and that it would be greatly prejudicial to her health to continue to cohabit with him. In his answer to the counter-claim the petitioner admits having accused his wife of adultery and having characterized her as charged, and admits having himself suffered from the disease of gonorrhea prior to his marriage, but alleges that he was cured of the disease and was not responsible for his wife's infection, and further that she had never had the disease prior to December, 1931. He also denies that he has refused to support the defendant, as she charges.

On the issue of adultery the factual question is whether or

not there is a reasonable possibility that the infection of the wife was transmitted by the husband: If there was such reasonable possibility, the husband's suit must fail.

The petitioner is a practicing physician in Newark, and his marriage to defendant took place on October 4th, 1919. During all of their married life the parties have lived in Newark. Until 1928 their relations to each other were harmonious and their marriage happy. Difficulties then arose, due principally to the wife's jealousy because of the husband's apparently undue familiarity with a female patient. It is not necessary to determine whether such jealousy was justified, since the wife does not charge her husband with adultery nor does the husband charge the wife with extreme cruelty. Suffice it to say that the parties commenced to draw apart from then on, and that the husband commenced to chafe under the yoke of his marriage and showed on more than one occasion that a divorce from her would be welcome to him.

When the petitioner was about eighteen years of age he contracted the venereal disease known as gonorrhea. Apparently his infection was not promptly or efficiently treated, but he believed himself to be cured and married a nurse whom he had met in his army service. In 1918, after cohabitation with her, he came reinfected with the disease, and claiming (and perhaps believing) that the reinfection was contracted from her, secured a divorce from her in Maryland on the ground of adultery, the action being undefended.

The reinfection produced an acute and severe attack of the disease which incapacitated him for many weeks, ever since which time he has suffered from rheumatism. It was a fact issue in the case whether this rheumatism was caused by the continued presence of gonococci in his system. That he believes it might be so is proved, in my judgment, not only by his declarations to that effect, but by the character of the remedial measures adopted and pursued by him.

It is difficult to believe that after the experience which the petitioner had had, in view of his training and experience as a physician with considerable genito-urinary practice, he could have believed that it was safe for him to marry the defendant,

as he did on October 4th, 1919. Even though he was, or professed to be a disciple of that school of medicine which holds that a deep-seated infection such as his had been can be positively pronounced cured on the basis of negative tests, still as a physician he was well aware of the imposing medical authority to the contrary. The only conclusion possible is that he recklessly exposed his wife to an infection which he knew or should have known was at least a reasonable possibility, using no contraceptives of prophylactics in his sexual relations with her, and taking no precautions to minimize the danger.

The defendant, a healthy and normal woman before her marriage to the petitioner, suffered during her marriage abdominal pains and other symptoms consistent with the presence of a gonococcal infection in her body. She was treated by the petitioner from time to time by applying tampons, a treatment indicated in cases of infection. Here again it is difficult to credit the petitioner's claim that defendant could not have been suffering from a gonococcal infection. He certainly should have known or at least suspected it, as I believe he did.

In the early part of December, 1931, the defendant developed an acute salpingitis, due to gonococcal infection. It is conceded that the petitioner and defendant had had no sexual relations for several weeks prior to defendant's illness, so that the petitioner could scarcely have infected his wife with a fresh case of gonorrhea, but there is ample medical evidence in the case to justify the conclusion that the defendant's infection, although acute, was not fresh, but an exascerbation of a long standing chronic gonorrhea, which might have been latent in her system for many years, and which was originally communicated to her from her husband.

On the question of adultery, the only issue which the defendant was called upon to meet was whether she had contracted the disease otherwise than from her husband. The charge is that she had committed adultery on certain dates at places unknown and with a person or persons unknown. Under this general charge it was sought to show that the

defendant had misconducted herself with one Harrison. In my judgment these charges were fully met and overcome by the proofs.

The petitioner's solicitor insists that where it appears, or is conceded as it is in this case, that the defendant is suffering from gonorrhea, the burden is on her to prove by a preponderance of the evidence, at least, that she derived it from contact with her husband, citing as authority *Thornton* v. *Thornton, 67 N. J. Eq. 499; 58 Atl. Rep. 647,* and quoting from page 501:

"In my judgment the presence of this disease places upon the husband [the defendant] the duty of clearly satisfying the court that he contracted it from his wife, if he would avoid the proper inference to be drawn from his condition."

But he failed to quote the very next sentence:

"The evidence is devoid of the slightest proof that the wife ever showed any evidences of such a disease."

That the charge of adultery must be proved beyond a reasonable doubt is too well settled to need citation of authority. In this case it is not necessary to go further than to hold that there is a reasonable possibility that the defendant's infection came from the petitioner in order to defeat the charges he brings against her. In my judgment the proofs amply justify such a find, and the petition must therefore be dismissed. *Smith* v. *Smith, 98 Atl. Rep. 844; affirmed, 88 N. J. Eq. 599; 102 Atl. Rep. 1054; Mount* v. *Mount, 15 N. J. Eq. 162.*

The petitioner does not contend that the proofs under the counter-claim fail to show a refusal or neglect on his part to maintain or provide for the defendant. He does contend, however, that he has not been guilty of the extreme cruelty charged.

It may be conceded that none of the cruelty charges, singly or collectively, amount to extreme cruelty under the statute, except the charges that the petitioner falsely and without justification charged the defendant with adultery, characterized her conduct and character as debased and immoral, and particularly, that he in fact infected her with gonorrhea,

greatly impairing her health. Upon the issue of extreme cruelty because of the communication by the husband of the venereal disease, I hold that it has been proved by the preponderance of the evidence that the disease was in fact so communicated to her. On the facts, the case is similar to *Cook* v. *Cook, 32 N. J. Eq. 475,* where this court laid down the rule that if a husband, knowing that he is in such a state of health that, by having connection with his wife, he will run the risk of communicating venereal disease to her, recklessly has connection with her and thereby communicates the disease to her, he is guilty of extreme cruelty, and the presumption is that he knew his own state of health and the probable result of the connection.

In *Ciocci* v. *Ciocci, 26 E. L. & E. 604, 611,* Dr. Lushington says:

"I hardly think it necessary to inquire whether there is evidence of his [the husband's] having been warned of the danger, if he married in the state in which he is clearly proved to have been, for I am of opinion that common sense, ordinary experience—I speak not of higher motives—must have suggested to him the probable consequences, the consequences likely to result in the ordinary course of things, from marriage under the circumstances proved to have existed; and if this were a point necessary to be determined, I should hold, and without doubt, that if a man married under such circumstances [having had venereal disease for some time immediately prior to the marriage, and, though in a convalescent condition, not entirely cured] and communicated to his wife the venereal disease, it was, to use the mildest term applicable to such conduct, such utter recklessness of the health and comfort of his wife, that if he did communicate such disease, he was guilty of cruelty in the eye of the law, and I should hold this upon the principle that whoever does an act likely to produce injury, and the injury follows, can never excuse himself by saying that he hoped a probable consequence might, by some peculiar good fortune, not follow." Language approved by this court in the *Cook Case, supra.* See, also, *Danielly* v. *Danielly, 93 N. J. Eq. 556; 118 Atl. Rep. 335.*

In the instant case the husband, as already pointed out, is a physician. He must have known that in marrying the defendant, and in indulging in sexual relations with her, without taking any precautions whatever, there was risk of his communicating the disease to her. If he did not know it he is not to be excused: he ought to have known it. His conduct in this respect amounts to extreme cruelty.

I am of opinion also that his unfounded and unjustified charges of adultery, coupled with the knowledge or imputed knowledge, that it was at least reasonably possible that he might have been responsible for her infection, constitute extreme cruelty. *Black* v. *Black, 30 N. J. Eq. 215; Hill* v. *Hill, 97 N. J. Eq. 237; 127 Atl. Rep. 584.*

The defendant's health has been grievously injured, to say nothing of the mental suffering she has undergone. To deny her relief, and thereby to force her to return to her husband (assuming he would receive her) would be to subject her to the risk of reinfection. It would be to further endanger her health, and to render her life one of such extreme discomfort and wretchedness as to incapacitate her, physically or mentally or both, from discharging her marital duties. The court will act to prevent such future harm. *Bonardi* v. *Bonardi, 113 N. J. Eq. 25; 116 Atl. Rep. 207.*

For the above reasons a decree will be advised dismissing the petition and granting the prayer of the counter-claim.